IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
ALBERT GRAY, JR.,                  :    CIVIL ACTION
         Plaintiff                 :
                                   :
     VS.                           :
                                   :
JO ANNE B. BARNHART,               :
Commissioner of Social Security,   :
         Defendant                 :    NO. 04-4078
```

**REPORT AND RECOMMENDATION**

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Albert Gray, Jr., brought this action under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act). The parties have filed cross-motions for summary judgment. For the reasons which follow, it is recommended that plaintiff's motion for summary judgment be granted and the motion of the Commissioner be denied.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a forty-seven (47) year-old male born on December 23, 1957 (Tr. 33). He has a high school education, attended two years of college, and received a "certificate of completion" to be a chemical technician (Tr. 35). His past relevant work experience

1

included jobs as a meter reader, security guard, fast food cook/cashier, mail handler, and dishwasher (Tr. 188, 260-61). Disability is alleged as of November 3, 1998 due to bipolar disorder, schizophrenia, and right hip pain (Tr. 187).

Plaintiff's DIB application, filed on March 2, 1999[1], was denied initially and upon reconsideration (Tr. 143-146, 150-152). He then requested a hearing before an administrative law judge (ALJ).  A hearing was commenced on June 7, 2000, at which, plaintiff, represented by counsel, testified along with a vocational expert (VE) and a medical expert (ME) (Tr. 30-71). At the end of this hearing, the ALJ ordered that plaintiff be given a consultative mental examination (Tr. 70).

In a decision rendered August 16, 2000, the ALJ determined that plaintiff has "severe" impairments, but retains the residual functional capacity to do his past work as a dishwasher.  Thus, he was determined to be not entitled to benefits (Tr. 130-136). Plaintiff filed a request for review with the Appeals Council who remanded the matter back on August 9, 2002 to the ALJ on the basis that the ALJ had never sent a copy of the consultative examination report to plaintiff's attorney for comments as he was required to do (Tr. 180-181).

---

[1] Plaintiff had previously applied for DIB and was awarded benefits in 1985.  He continued to receive such benefits until November 1995 when they were ceased because he returned to work performing substantial gainful activity (Tr. 130).

Plaintiff's attorney then sent a letter to the ALJ on January 17, 2003 and reported that plaintiff had been discharged from a psychiatric program in January and had been working at a local hospital. The letter also indicated that plaintiff wanted to change his appeal to a closed period of disability (Tr. 549).

A supplemental hearing was held on January 24, 2003, at which, plaintiff again testified along with a VE and an ME (Tr. 72-122). In a decision dated April 9, 2003, the ALJ found that plaintiff had a "combination of mental impairments (polysubstance abuse disorder with substance-induced mood disorder, and/or bipolar disorder) considered severe," but did not meet or equal a listed impairment. The ALJ further determined that plaintiff retains the residual functional capacity to perform simple, routine instructions within a low stress environment and this did not preclude his past work as a dishwasher (Tr. 15-24).

The ALJ's findings became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on July 7, 2004 (Tr. 4-6). Presently, plaintiff has appealed that decision to this court.

## **JUDICIAL REVIEW**

The role of this court, on judicial review, is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Pierce v. Underwood, 587 U.S. 552

(1988).  "Substantial evidence" is not "a large or significant amount of evidence but rather such relevant evidence as a reasonable mind might accept to support a conclusion." Id. at 664-65.  "The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  Stunkard v. Secretary of Health and Human Services, 841 F.2d 57 (3d Cir. 1988), quoting Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423(d)(1) (1982).  A claimant can establish such a disability in either of two (2) ways: (1) by producing medical evidence that one is disabled per se as a result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Regulations No. 4, Subpart P, Appendix 1 (1987); see Heckler v. Campbell, 461 U.S. 458 (1987); Stunkard v. Secretary of Health and Human Services, 841 F.2d at 59; Kangas v. Bowen, 823 F.2d at 777; or (2) by demonstrating an impairment of such severity as to be unable to engage in "any kind of substantial gainful work which exists in the national economy."  Heckler v. Campbell, 461 U.S. at 461; 42 U.S.C. § 423(d)(2)(A).

This method of proving disability requires that the claimant

first show that he/she is unable to return to his/her former work due to a physical or mental impairment. Once a claimant has demonstrated that he/she is unable to perform his/her former work, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he/she is able to perform, taking into consideration the claimant's physical ability, age, education and work experience. See Kangas v. Bowen, supra; Rossi v Califano, 602 F.2d 55, 57 (3d Cir. 1979); 42 U.S.C. § 423(d)(2)(A).

This case was decided under the medical-vocational regulations which require a five-step sequential evaluation of disability claims. See generally, Heckler v. Campbell, supra; Santise v. Schweiker, 676 F.2d 925 (3d Cir. 1982). The sequential evaluation considers in turn current work activity, the severity of impairments, the ability to perform past work and vocational factors. 20 C.F.R. §§ 404.1520 and 416.920.

In this case, the Commissioner reached the fourth step of the evaluation and determined that plaintiff was capable of performing his past work as a dishwasher.

## MEDICAL HISTORY

The relevant evidence in this case consists of medical reports and testimony which are summarized as follows:

Plaintiff was given a psychiatric evaluation on May 12, 1999

by Dr. Alan Cooperstein at the request of the Pennsylvania Bureau of Disability Determination. Dr. Cooperstein noted that plaintiff had a history of drug dependence involving cocaine and alcohol. He reported that plaintiff was co-operative, pleasant, and restless. His speech was goal-oriented, and mood normal with some slight depression. His affect was full and appropriate with no evidence of thought disorder, and no evidence of delusions. Dr. Cooperstein diagnosed plaintiff with schizophrenia, paranoid type, and alcohol and cocaine abuse. He also gave him a GAF of 48-50[2] "placing him at the highest level of the serious range of symptoms involving serious impairment in social occupational or school functioning" (Tr. 295-297).

Plaintiff was given a psychological disability evaluation on November 15, 1999 by Robert Dimtommaso, Ph.D. Dr. Dimtommaso noted that plaintiff was dependent on his mother for finances and decisions. Plaintiff's mood was depressed and emotional expression was appropriate to thought content and situation. "There is evidence of auditory hallucinations but no illusions, depersonalization or derealization." His stream of thought was within normal limits, but he does have some delusional thinking.

---

[2]A Global Assessment of Functioning is the scale of psychological, social, and occupational functioning on a hypothetical continuum of mental health, illness. A score of 70 is characteristic of only some mild symptoms or difficulty in social, occupational, or school functioning but is generally functioning pretty well. <u>Diagnostic and Statistical Manual</u> (Fourth Edition), American Psychiatric Association at 32.

Dr. Dimtommaso's diagnosis was psychotic disorder and he opined that plaintiff's prognosis was guarded. He added that "this is an individual who is likely to have psychiatric problems during the course of his lifetime." Regarding activities of daily living, Dr. Dimtommaso indicated that plaintiff does not clean and his mother takes him shopping. He uses public transportation and depends on his mother for maintaining the residence. As to social functioning, plaintiff apparently gets along with others. He is able to "understand, retain and follow directions but depending on his mental state may have difficulty performing activities, attending to task and sustaining a routine. He seems able to make decisions and in his current state may have difficulty performing consistently. Regarding adaption to stressful circumstances, Dr. Dimtommaso wrote that plaintiff does not handle stress well and stress may affect his ability to react to deadlines or schedules. He added that "in the face of conflict, he may become aggressive and stress may affect his ability to make decisions, maintain regular attendance" (Tr. 302-308).

Plaintiff was given a psychological evaluation by Dr. Joseph Slap on July 5, 2000 at the request of the ALJ at the June 7, 2000 administrative hearing (Tr. 70).[3] Dr. Slap noted that plaintiff had several psychiatric hospitalizations and has attended a

---

[3]The ALJ stated at the conclusion of the hearing that he was sending plaintiff for a consultative psychiatric examination (Tr. 70).

Veteran's Administration Clinic as an outpatient for many years. He sees a psychiatrist once a month for psychotropic medication, and continues to hear voices. Plaintiff's affect "appeared to be of good quality and appropriate to the thought content." Dr. Slap gave his diagnosis as paranoid schizophrenia which will continue in the immediate future. He opined that plaintiff "could not hold on to a job for very long. . . . because of his impaired memory and impaired concentration and particularly because of his paranoia, as evidenced by his ideas of reference, I do not feel that he could remain in any work place for any significant amount of time" (Tr. 456-462).

Dr. Slap also filled out a mental assessment form. He opined that plaintiff has no ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, maintain attention/concentration, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, and understand, remember, and carry out even simple job instructions. He further found him to have "fair" ability to follow work rules, use judgment, and function independently (Tr. 463-464).

The record also contains several updates from the Philadelphia Veterans Affairs Medical Center, Addiction Recovery Unit (VAMC). On July 17, 2000, Dr. Wayne Barber indicated that plaintiff suffered with bipolar disorder with cocaine dependence, and gave

him a GAF of 50 (Tr. 516). He repeated this diagnosis on March 6, 2001. On August 6, 2001, Dr. Barber reported that plaintiff was fully oriented without evidence of cognitive inefficiency. His speech was logical, coherent, relevant and goal directed without hint of abnormal ideation. "Insight and judgment are acceptable" (Tr. 468). Dr. Barber reiterated this assessment in several updates in 2001 and 2002 (Tr. 473-477).

On December 5, 2002, a note from the VAMC indicated that plaintiff had been working two jobs, daytime at Crozier Hospital and evening at Walmart. However, he got into some confrontation with a security guard and lost the hospital job. A mental status examination on this date stated that plaintiff mood was of mild tension and "ready irritability." His affect was "level and well modulated with normal range of appropriate display." In addition, plaintiff indicated that he was not hearing voices (Tr. 465).

A medical expert (ME), Dr. Richard Saul, testified at the June 7, 2000 administrative hearing. After reviewing the medical evidence and listening to the hearing testimony, he opined that plaintiff's diagnoses were schizoaffective disorder with bipolar features and substance addiction disorder. He found, however, that these conditions did not meet a listed impairment. Dr. Saul further opined that plaintiff was "moderately" impaired in his activities of daily living, and his ability to maintain social functioning. His ability to maintain concentration, persistence,

9

or pace would "often" be affected, and he would have "repeated" episodes of deterioration or decompensation in work-like settings (Tr. 53-59).

A vocational expert (VE) also testified at this hearing. The ALJ asked the VE to consider an individual with plaintiff's vocational profile who has no exertional limitations and the limitations he testified to at the hearing. The VE responded that this individual could perform his past work as a dishwasher. In response to plaintiff's counsel's hypothetical that plaintiff was unable to complete a day's work, the VE opined that plaintiff could perform no work (Tr. 59-61).

Plaintiff testified at the January 24, 2003 hearing that he lived at his mother's home, was able to take public transportation, but did not have a driver's licence because of unpaid tickets. He indicated that had worked at Crozier Hospital, but had an incident with security and had to leave the job. He applied for reinstatement, but had not heard anything as of the date of the hearing. Before February 2001, he had been unemployed for several years due to problems with concentration, auditory hallucinations, and depression. He had been clean of alcohol and drugs for 2-3 years, but had a relapse when he lost the Crozier job. He still hears voices even when taking his medication. He does not like to go out in public, and was ambiguous about losing some jobs whether he had been fired or quit because of not being able to control his

temper (Tr. 75-92).

A medical expert (ME), Dr. Richard Cohen, testified at this hearing and opined that plaintiff's principal diagnosis was substance abuse with alcohol and marijuana dependency. He further opined that plaintiff had a substance induced mood disorder, and that drugs caused his mood swings and mimic bipolar disorder. He added that plaintiff did not meet a listed impairment even if his bipolar disorder was considered independent of drug use and found him to only have mild impairment in activities of daily living, social impairment, and concentration. Dr. Cohen also testified that plaintiff is able to work with his hallucinations (Tr. 108-111).

## DISCUSSION

The Commissioner's findings must be affirmed if they are supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). The role of this court is to determine whether there is substantial evidence to support the Commissioner's decision. Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924, 113 S. Ct. 1294 (1993).

In coming to a decision, it is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. Richardson v.

Perales, supra.

In this case, the ALJ found that the medical evidence establishes that plaintiff has a "combination of mental impairments (polysubstance abuse disorder with substance-induced mood disorder, schizoaffective disorder, and/or bipolar disorder) considered severe." The ALJ further determined that such impairments do not meet a listed impairment, and that plaintiff has the residual functional capacity to perform simple, routine instructions within a low stress environment which includes his past job as a dishwasher. He was, thus, found not entitled to benefits during a closed period of disability from January 2000 to February 2001. For the reasons which follow, this court finds that the ALJ's decision is not supported by substantial evidence and summary judgment should be granted in favor of the plaintiff.

In his opinion, the ALJ found that the evidence from the VAMC establishes that the plaintiff is "not more than moderately symptomatic or moderately function-impaired when not using drugs or alcohol." He also accepted the testimony of ME, Dr. Richard Cohen, as being consistent with plaintiff's "updated medical documentation and current hearing testimony" (Tr. 22). As set forth above, Dr. Cohen testified that plaintiff's impairments are "polysubstance abuse with alcohol hallucinosis, and that claimant's use of alcohol and marijuana induces a mood disorder and an amotivational syndrome." He further testified that independently plaintiff has

12

a bipolar disorder, but such imposes only "mild" limitations on "activities of daily living, social functioning, and concentration, and no breaks or extended, repeated periods of decompensation" (Tr. 22).

We are of the opinion, however, that the ALJ erred in his reliance on the testimony of Dr. Cohen that plaintiff's mental impairments are drug-related and that an independent bipolar disorder causes him only "mild" limitations. In addition, we find that the ALJ erred in giving no weight to the opinion of Dr. Joseph Slap who performed a mental consultative examination upon his own request at the conclusion of the June 7, 2000 administrative hearing. Furthermore, contrary to the ALJ's determination, we find that Dr. Slap's assessment is consistent with the other evidence in the record, including the evidence from the VAMC, which indicates that plaintiff suffered with disabling mental impairments independent of any substance abuse for at least the period of closed disability at issue.

In May 1999, plaintiff was evaluated by Dr. Alan Cooperstein at the request of social security. He diagnosed plaintiff with schizophrenia, paranoid type and gave him a GAF of 48-50 which he stated placed "him at the highest level of the serious range of symptoms involving serious impairment in social occupational or school functioning" (Tr. 295-297).

In November 1999, Robert Dimtommaso, Ph.D., diagnosed

13

plaintiff with psychotic disorder and wrote that "this is an individual who is likely to have psychiatric problems during the course of his lifetime."  He further indicated that plaintiff is able to "understand, retain and follow directions but depending on his mental state may have difficulty performing activities, attending to task and sustaining a routine."  He added that plaintiff does not handle stress well and it may affect his ability to make decisions and maintain regular attendance (Tr. 302-308).

Dr. Slap gave plaintiff a psychological evaluation in July 2000.  Despite the fact that the ALJ, himself, ordered this consultative examination, he totally rejected Dr. Slap's findings even though they were generally consistent with the assessments of Drs. Cooperstein and Dimtommaso.  Dr. Slap diagnosed plaintiff with paranoid schizophrenia and opined that he "could not hold onto a job very long. . . . because of his impaired memory and impaired concentration and particularly because of his paranoia, as evidenced by his ideas of reference."  He concluded that "I do not feel that he could remain in any work place for any significant amount of time" (Tr. 456-462).

Dr. Slap further opined in a mental assessment form that plaintiff has "no" ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, maintain attention/concentration, behave in an emotionally stable manner, relate predictably in social situations, demonstrate

reliability, and understand, remember, and carry out even simple job instructions (Tr. 463-464).

Plaintiff was also treated at the VAMC Addiction Recovery Unit for several years from 2000 through 2003. Contrary to the assertion of the ALJ, while plaintiff was being treated there for addiction, there is no indication that during this time, drugs and/or alcohol abuse caused plaintiff's mental impairments and that without substance abuse his mental impairments caused him no more than moderate limitations.

Several updates from the VAMC during this period indicated that plaintiff's speech was logical, coherent, relevant and goal directed without hint of abnormal ideation, and his insight and judgment were acceptable. However, plaintiff was also consistently diagnosed by Dr. Wayne Barber, his treating psychiatrist, with bipolar disorder and given GAF scores of 50. In addition, the VAMC records do not indicate that alcohol and/or substance abuse was responsible for his mental impairments (Tr. 468, 473-477, 516).

Moreover, at the close of the January 2003 administrative hearing, the ALJ stated to plaintiff's attorney, Alida Shatzer, Esq., that there was some confusion over a VAMC record that had suggested that plaintiff had possibly tested positive for cocaine in July of 2000. The ALJ then requested from Shatzer that this be clarified and Shatzer responded that he would attempt to do so (Tr. 116, 120-122).

15

Plaintiff asserts in his summary judgment motion that at the ALJ's direction, Shatzer contacted the VAMC about this clarification and received a letter from Dr. Wayne Barber, plaintiff's treating psychiatrist and Medical Director of the Addiction Recovery Unit of the VAMC, addressing such. Shatzer then faxed this letter to the ALJ on February 10, 2003 and has attached it to this current motion.

In such letter, Dr. Barber wrote that he assumed psychiatric care of the plaintiff on February 15, 2001 and had treated him since that time for a longstanding primary diagnosis of bipolar disorder and, at no time during his treatment, was he aware that plaintiff returned to active cocaine use. He added that the notes from his counselor, Ms. Deborah Wiles, indicate that plaintiff's last known use of cocaine was in August 1998. He wrote further that "[T]here is no question in my mind that this patient's diagnosis of Bipolar Disorder exists independent of his history of drug use and continues to be disabling." He stated that "[I]n closing, I have no reason to believe that Mr. Gray has been involved in problematic substance use during the period I have been treating him. There is no question in my mind that he is fully disabled by his primary psychiatric diagnosis of Bipolar Disorder."

It is apparent from the above that the ALJ received the clarification that he requested about plaintiff's substance abuse from his treating psychiatrist, but decided to simply disregard it.

"Treating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987).[4]

Accordingly, we find that plaintiff is entitled to the closed period of disability.  There is, however, now some dispute whether plaintiff agreed to have his disability considered a closed one. He asserts in his motion that the transcript of record shows no discussion that he agreed to a closed period of disability from January 2000 to February 2001.  He acknowledges that a letter was sent to the ALJ on January 17, 2003 notifying him that he had become employed in 2001 and was changing the appeal to a closed period.  He states, however, that no dates were discussed and that request became null and void when the unfavorable decision was issued.  He now requests that this court consider an ongoing period of disability from March 2, 1999.

Although the plaintiff is correct that there is no agreement on the record that he agreed to a closed period of disability, the

---

[4] 20 C.F.R. § 416.927 (d)(2) provides in part that ". . .[I]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. . ."

17

ALJ states in his decision that his attorney stipulated that he wished to "amend his application to claim only a closed period of disability from January 2000 to February 2001 (Tr. 18). In addition, as the Commissioner points out in her summary judgment motion, "there is nothing in the record to indicate that such a discussion did not occur off the record at the supplemental hearing, especially since Mr. Gray did not object on this basis to the Appeals Council" (See Summary Judgment brief at p. 7).

The Commissioner also points out that plaintiff showed his intentions to only be considered for a closed period of disability in his January 17, 2003 letter to the ALJ. In such, plaintiff's attorney, Alinda Shatzer, writes that "Mr. Gray was discharged from his VA psychiatric program in 2001, and he was able to start working at Springfield Hospital. I am attempting to get verification of the dates of employment from the hospital. I have discussed this with the claimant, and we would like to change the appeal to a closed period of disability" (Tr. 549).

It is apparent from this letter that plaintiff had sought a closed period of disability whether he agreed to such on the record or the specific dates of the closed period. However, we are of the opinion that this matter should be remanded back to the ALJ to consider whether plaintiff continued to be disabled after the closed period ended in February 2001. We base this recommendation on the same rationale discussed above for recommending the granting

of disability for the closed period.  The evidence indicates that plaintiff has a continuing mental disability.  As noted, Dr. Barber stated in his February 2003 letter to the ALJ that plaintiff has bipolar disorder independent of his history of drug use and such condition "continues to be disabling."  He stated further that "[T]here is no question in my mind that he is fully disabled by his primary psychiatric diagnosis of Bipolar Disorder."

We are aware that plaintiff attempted to return to work at Springfield Hospital, Wal-Mart, and Crozier-Chester Hospital during periods of 2001, 2002, and 2003.  He apparently lost all three jobs and it is very probable that it was due to his mental condition.  However, this is an issue that must be considered by the ALJ upon remand.  Also, on remand, the ALJ should obtain an updated mental status report from Dr. Barber of the VAMC and/or any other doctor who is currently treating the plaintiff.  Such report should, of course, address plaintiff's current drug status and its relationship to his mental condition.

Therefore, we make the following:

**RECOMMENDATION**

**AND NOW**, this            day of                  , 2005, **IT IS RESPECTFULLY RECOMMENDED** that:

1. the Commissioner's Motion for Summary Judgment be **DENIED**;

2. the Plaintiff's Motion for Summary Judgment be **GRANTED**;

3. the final decision of the Commissioner denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act be **REVERSED**; and

4. the matter be **REMANDED** to the Commissioner for a calculation of benefits for the closed period of disability from January 2000 to February 2001; and

5. the matter also be **REMANDED** to the Commissioner to determine whether the plaintiff remained disabled after the closed period of disability in accordance with this Report and Recommendation.

_____
**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**